UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | : | |
| CENDANT CORPORATION, | : | |
| *n/k/a Avis Budget Group, Inc.,* | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | NO. |
| | : | |
| v. | : | |
| | : | |
| WALTER A. FORBES, ROBERT T. | : | |
| TUCKER as TRUSTEE of the FORBES | : | |
| FAMILY TRUST, ROBERT T. TUCKER | : | |
| individually, BUCK, STURMER & CO. | : | |
| P.C., CAREN FORBES, LAURA CARLIN, | : | |
| ALLISON FORBES, JOHN DOE | : | |
| TRUSTEE OF THE JOHN DOE TRUST, | : | |
| and FG ENTERPRISES LLC | : | |
| | : | |
| Defendants. | : | JUNE 19, 2008 |

## JOINT COMPLAINT

COMES NOW, Plaintiffs the United States of America ("the United States") and

Cendant Corporation n/k/a Avis Budget Group, Inc. ("Cendant") jointly and individually

against Defendants Walter A. Forbes, Robert T. Tucker as Trustee of the Forbes Family Trust,

Robert T. Tucker individually, Buck, Sturmer & Co. P.C., Caren Forbes, Laura Carlin, Allison

Forbes, John Doe Trustee of the John Doe Trust and FG Enterprises LLC and for their causes

of action, allege and state as follows:

1025163v1

Dockets.Justia.com

## INTRODUCTION

1.     Now that the United States Supreme Court has denied Mr. Forbes' petition for Certiorari, the United States and Cendant seek to enforce the $3.275 billion Restitution Order imposed by this Court on January 17, 2007 against Defendant Walter A. Forbes for his role in the accounting fraud at Cendant, the disclosure of which triggered a $14 billion one-day drop in the value of Cendant's outstanding shares.  Among other forms of relief, this Complaint seeks to set aside the numerous fraudulent transfers, starting immediately after the accounting scandal, made by Mr. Forbes to his wife, daughters, trusts and a wholly owned business entity exceeding $45 million.  Plaintiff Cendant also seeks a money judgment against Mr. Forbes' long-time personal attorney, Defendant Robert T. Tucker and the accounting firm of Buck, Sturmer & Co., P.C. for their roles in assisting Mr. Forbes in the creation of, and the fraudulent transfer of assets into, the Forbes Family Trust.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1345, because the United States is a Plaintiff.

3.     This Action involves, among other claims, fraudulent transfer claims under 28 U.S.C. § 3301 et seq. and is brought pursuant to the United States' restitution enforcement powers, 18 U.S.C. § 3612(c) and 28 U.S.C. § 3664(m).

4.     This Court also has jurisdiction over this proceeding, pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and this action is between citizens of different states.

5.     The District of Connecticut (the "District") is the proper venue for this proceeding, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in the District and the underlying indebtedness arises from this District based on the Restitution Order entered against the Defendant Walter A. Forbes in his criminal case bearing docket number 3:02-CR-00264 (the "Restitution Order").

## PARTIES

6.     The United States of America is a Plaintiff.

7.     Cendant n/k/a Avis Budget Group, Inc. is a Plaintiff.  It is a Delaware Corporation with its executive offices located at 6 Sylvan Way Parsippany, New Jersey 07054. Cendant was formed on December 17, 1997 as the result of a merger of HFS Incorporated and CUC International, Inc.  Cendant is a designated victim and recipient of the restitution payments under the Restitution Order.

8.     Defendant Mr. Forbes is an individual resident of the State of Connecticut with his last known address at 687 Smith Ridge Road, New Canaan, Connecticut.  Mr. Forbes is currently incarcerated at Allenwood Federal Correctional Complex, White Deer, Pennsylvania 17887.

9.     Defendant Forbes Family Trust is a Connecticut trust established by Trust Agreement dated June 8, 1998, between Mr. Forbes, as Settlor, and Robert T. Tucker ("Mr. Tucker"), as Trustee and executed in Stamford, Connecticut on the same date.  Upon information and belief, Mr. Tucker drafted the Forbes Family Trust.

10.     Defendant Mr. Tucker, sued here in his capacity as Trustee of the Forbes Family Trust and in his individual capacity by Cendant only, is an individual resident of the State of

New York, who maintains his primary residence at 17 Meadowlark Road, Rye Brook, New York. During all relevant times herein, Mr. Tucker served as attorney for Mr. Forbes with respect to personal and financial matters, including personal investments and estate planning from the 1980s up to the present.

11. Defendant Buck, Sturmer & Co., P.C. ("Buck Sturmer") is a New York accounting firm with its principal place of business at 521 Fifth Avenue, Suite 2100, New York, New York. During all relevant times, Buck Sturmer functioned as Mr. Forbes' accountant and managed the financial affairs of Mr. and Mrs. Forbes.

12. Defendant Caren Forbes ("Mrs. Forbes") is an individual resident of the State of Connecticut, who maintains her primary residence at 687 Smith Ridge Road, New Canaan, Connecticut. At all relevant times, Mrs. Forbes was and remains Mr. Forbes' wife.

13. Defendant Laura Carlin *nee* Forbes ("Laura Carlin") is an individual resident of the State of California, who maintains her primary residence at 9100 Wilshire Boulevard, 400 West, Beverly Hills, California. Laura Carlin is Mr. Forbes' daughter.

14. Defendant Allison L. Forbes ("Allison Forbes") is an individual resident of the State of California, who maintains her primary residence at 320 South Reeves Drive B, Beverly Hills, California. Allison Forbes is Mr. Forbes' daughter.

15. Defendant John Doe Trustee of the John Doe Trust is, upon information and belief, a Connecticut trust established by Mr. Forbes and the trust agreement pursuant to which such trust was established was, upon information and belief, drafted by Mr. Tucker. According to Mr. Forbes' 2001 United States Gift Tax Return, transfers were made to such a Trust "C/O Robert Tucker Esq., 61 Purchase [Street,] Rye, NY 10580."

16.     Defendant FG Enterprises LLC is a Connecticut limited liability company with its principal place of business at 537 Steamboat Road, Greenwich, Connecticut.

**BACKGROUND**

17.     Prior to 1981, Mr. Forbes was named the Chief Executive Officer of the company that would eventually become CUC International, Inc. ("CUC").  Between 1983 and 1997, Mr. Forbes also served as Chairman of CUC's (and its predecessor's) Board of Directors.  He held both of these positions until December 1997 when CUC merged with HFS Incorporated ("HFS") to form Cendant.

18.     In accordance with agreements CUC and HFS entered into in connection with the merger, Mr. Forbes became Chairman of the Board of Cendant.

19.     Beginning in 1988, and possibly earlier, employees in CUC's accounting department engaged in a conspiracy (the "Conspiracy") to fraudulently inflate CUC's operating income.  These individuals employed various schemes in furtherance of the Conspiracy.  The object of the Conspiracy was to cause a continual increase in the value of CUC's publicly traded stock.

20.     Because Mr. Forbes was compensated in large part by options to purchase CUC's stock, he benefited directly from the inflation in CUC's stock value caused by the Conspiracy.

21.     On April 15, 1998, Cendant publicly announced the discovery of the fraud perpetrated by Mr. Forbes and other employees of CUC and Cendant.

22.     One day following Cendant's announcement, Cendant's share price dropped 46% on the New York Stock Exchange, and Cendant shareholders lost approximately $14 billion in share value.

23.     Beginning on April 16, 1998, Cendant shareholders began filing lawsuits against the company and others (the "Shareholder Suits") in the U.S. District Court for the District of New Jersey and elsewhere seeking to recover money damages that they suffered as a result of the misconduct of Mr. Forbes and others.  In the Shareholder Suits, the plaintiffs alleged that Mr. Forbes and other members of the Conspiracy had artificially inflated the company's operating income by more than $500 million over a three-year period.  They also alleged that the company's market capitalization dropped more than $20 billion as a result of the massive fraud orchestrated by Mr. Forbes and other members of the Conspiracy.

24.     Mr. Forbes became aware of the existence and allegations of the Shareholder Suits shortly after such suits were filed, and counsel appeared on behalf of Mr. Forbes in the Shareholder Suits shortly after they were filed.

25.     Mr. Tucker also became aware of the Shareholder Suits shortly after they were filed because he was also a named defendant in those actions.

26.     Shortly after the filing of the Shareholder Suits, upon information and belief, Mr. Forbes, acting in concert with his long-time attorney Mr. Tucker, began to transfer real property, cash, securities and other property interests out of his name in an attempt to thwart future collection efforts by Mr. Forbes' creditors.

27.     Mr. Forbes also engaged Defendant accounting firm Buck Sturmer to manage his family's personal financial affairs, including payment of all household bills directly out of

Mr. Forbes' various accounts. Buck Sturmer actively assisted Mr. Forbes and Mr. Tucker in transferring assets out of Mr. Forbes' name with the intent to hinder, delay or defraud Mr. Forbes' creditors.

28. Over the next three years, upon information and belief, through the assistance of Mr. Tucker and Buck Sturmer, Mr. Forbes transferred over $21 million in cash, securities and partnership interests to his wife, daughters and to the John Doe Trust for no consideration.

29. Over the next three years, upon information and belief, through the assistance of Mr. Tucker and Buck Sturmer, Mr. Forbes transferred approximately $864,003.37 in cash and approximately $1.7 million in various partnership interests to FG Enterprises LLC for no consideration.

30. On June 8, 1998, less than two months after Cendant's announcement of the accounting irregularities, and less than a month before Mr. Forbes would leave Cendant, Mr. Forbes transferred his interests in real estate located in Wisconsin and Montana and approximately $3 million in cash to the newly created Forbes Family Trust for no consideration, in concert with Mr. Tucker and Buck Sturmer.

31. On the same day, Mr. Forbes transferred his interest in property located in Vail, Colorado to Mrs. Forbes for the nominal consideration of $10.00. Approximately three and a half years later, Mrs. Forbes sold the Vail property for $13.5 million.

32. Mr. Forbes left Cendant in July 1998.

33. On December 4, 1998, Mr. Forbes transferred his interest in property located in Vero Beach, Florida to Mrs. Forbes for the nominal consideration of $10.00.

34.     On December 7, 1999, Cendant publicly disclosed that it had reached an agreement in principle to settle the bulk of the Shareholder Suits. Under the terms of the final settlement agreement, the company was required, among other things, to make a cash payment of approximately $2.85 billion (the "Cendant Cash Settlement").

35.     The agreement memorializing the Cendant Cash Settlement specifically and expressly reserved Cendant's right to bring one or more actions for contribution against individual defendants such as Mr. Forbes.

36.     Eight days later, on December 15, 1999, Mr. Forbes transferred his interest in the Forbes family home, located in New Canaan, Connecticut, to Mrs. Forbes for the nominal consideration of $10.00.  Mr. Forbes would later testify at his criminal trial that the New Canaan property was worth between $10 and $15 million at the time of the transfer.

37.     The amount of assets available to Mr. Forbes' creditors was substantially reduced as a result of these transfers.  On November 11, 1997, Mr. Forbes represented to a lending bank that he had a net worth of over $200 million.  By January 31, 2005, his accountants calculated that his net worth had been reduced to less than $5 million.

38.     Immediately after the disclosure of the discovery of accounting irregularities at the former CUC, the United States Attorneys' Office and the Securities and Exchange Commission started investigations.

39.     On June 14, 2000, three former CUC executives, including the chief financial officer, pled guilty to federal criminal charges based on their participation in the accounting fraud.

40. On February 28, 2001, a grand jury indicted Walter Forbes on federal criminal charges for his role in the conspiracy. On the same day, the Securities and Exchange Commission filed a civil suit against Mr. Forbes in the District of New Jersey accusing him of participating in the accounting fraud.

41. Following his indictment, a jury trial ensued in a criminal action known as United States of America v. Walter A. Forbes and E. Kirk Shelton, and bearing criminal action number 3:02:cr-00264-AWT. The jury was unable to reach a verdict as to Mr. Forbes and a mistrial was declared. Following a retrial, a jury again was unable to reach a verdict as to Mr. Forbes and another mistrial was declared.

42. In October 2006 a second retrial commenced. On October 31, 2006, Mr. Forbes was found guilty by a jury on 3 counts of his indictment. For his crimes, Mr. Forbes was sentenced to 151 months in prison. The Court of Appeals for the Second Circuit thereafter affirmed his conviction and Mr. Forbes' Petition for Writ of Certiorari was denied by the United States Supreme Court on May 19, 2008.

43. On January 17, 2007 the Honorable Alan H. Nevas, United States District Judge, imposed a Restitution Order in the amount of $3.275 billion against Mr. Forbes.

44. To this date, Mr. Forbes has contributed substantially nothing to the satisfaction of the Restitution Order which has over $3 billion dollars still due and owing.

FIRST COUNT
(By Plaintiff United States of America -
Intentional Fraudulent Transfer Against Defendants Walter A. Forbes and The Forbes Family Trust)

45. Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

46.     On June 8, 1998, Mr. Forbes and Mr. Tucker executed a Trust agreement signed in Stamford, Connecticut establishing the Forbes Family Trust.

47.     The Forbes Family Trust names Mr. Tucker as trustee and Mr. Forbes' descendants, including Defendants Laura Carlin and Allison Forbes, as beneficiaries.

48.     The Forbes Family Trust was established as a vehicle through which Mr. Forbes attempted to place his assets out of the reach of his creditors, including Cendant, Cendant's shareholders, and the United States.

49.     By Quit Claim Deed from his brother, James Forbes, recorded on May 19, 1998, Mr. Forbes acquired properties, including all improvements thereon, commonly known as 8230 E. Forbes Road, Gordon, WI, containing approximately 10.3 acres ("Wisconsin Parcel #1"), 8262 E. Forbes Road, Gordon, WI, containing approximately 26.51 acres ("Wisconsin Parcel #2") and 8262 E. Forbes Road (previously 8321), Gordon, Wisconsin, containing approximately 25.50 acres ("Wisconsin Parcel #3) (collectively the "Wisconsin Property"). The Wisconsin Property is more particularly described in the above-referenced Quit Claim Deed, recorded as Document No. 698497 in the Office of Register of Deeds, Douglas County, Wisconsin.

50.     On June 8, 1998, Mr. Forbes executed a Warranty Deed transferring the Wisconsin Property to the Forbes Family Trust for no consideration.  The Warranty Deed was not recorded until nearly three years later, on April 20, 2001.

51.     Upon information and belief, the value of the Wisconsin Property at the time of the transfer to the Forbes Family Trust was approximately $2 million.

52.    Between 1998 and 2001, Mr. Forbes spent a total of $2,969,596.82 on furnishings and capital improvements to the Wisconsin Property. With the help of defendants Mr. Tucker and Buck Sturmer, these transfers were characterized as loans from Mr. Forbes to the Forbes Family Trust. Mr. Forbes received promissory notes (the "Notes") from the Forbes Family Trust which were secured by mortgages on the property ("Mortgages"). The Notes and Mortgages were immediately transferred from Mr. Forbes to Mrs. Forbes for no consideration.

53.    By Memorandum dated March 26, 2001, Mr. Tucker instructed one Michael Milliken, Esq. ("Mr. Milliken"), a Wisconsin lawyer who drafted the Notes and Mortgages, to redo each Note and Mortgage to name Mrs. Forbes rather than Mr. Forbes as the creditor. Mr. Tucker then advised Mr. Milliken that he would send the Notes and Mortgages made to Mr. Forbes' order back to Mr. Milliken.

54.    The net effect of this scheme was to transfer $2,969,596.82 in additional cash out of Mr. Forbes' legal control for no consideration.

55.    Upon information and belief, the present fair market value of the Wisconsin Property exceeds $6 million.

56.    Additionally, in 1998, Mr. Forbes transferred his interest in property commonly known as Hell Roaring Ranch, Montana to the Forbes Family Trust for no consideration.

57.    On December 20, 2005, the Forbes Family Trust sold its interest in Hell Roaring Ranch for $1 million.

58.    Prior to either the creation of, or transfers to, the Forbes Family Trust, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value. Moreover,

at the time of the transfers, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

59.     At the time of the transfers to the Forbes Family Trust, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

60.     As a result of the Restitution Order, the United States is a creditor of Mr. Forbes.

61.     Mr. Forbes did not seek the United States' consent for the transfers to the Forbes Family Trust.

62.     Mr. Forbes made the transfers to the Forbes Family Trust with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

63.     The Forbes Family Trust was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

SECOND COUNT
(By Plaintiff United States of America –
Nominee Ownership of the Wisconsin Property Against Defendants Walter A. Forbes
and The Forbes Family Trust)

64.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

65.     Upon information and belief, despite transferring legal title of the Wisconsin Property to the Forbes Family Trust, Mr. Forbes continued to enjoy the benefits of the property from the time it was first acquired to the date of his incarceration on August 7, 2007.

66.     Mr. Tucker is a nominee who holds bare legal title to the Wisconsin Property for the benefit of Mr. Forbes.

67. Property held by a taxpayer's nominee or alter ego may be subjected to a federal tax lien or levy.

68. The Restitution Order against Mr. Forbes is a lien in favor of the United States on all property and rights to property of Mr. Forbes as if the liability of Mr. Forbes were a liability for tax assessed under the Internal Revenue Code of 1986.

69. Accordingly, the nominee theory of ownership applied by federal courts to levy on property held by nominees of delinquent taxpayers is equally applicable to property held by nominees of defendants ordered to pay restitution.

70. The following applicable factors are to be considered in determining whether property is held by a nominee:

   (a)    inadequate or no consideration was paid by the nominee;

   (b)    the property was placed in the nominee's name while the transferor remains in control of the property;

   (c)    there is a close relationship between the nominee and the transferor;

   (d)    the transferor retains possession;

   (e)    the transferor continues to enjoy the benefits of the transferred property; and

   (f)    expenditure of personal funds by the transferor to purchase and maintain the property.

71. All of the factors are present here:

   (a)    Mr. Forbes transferred the Wisconsin Property to the Forbes Family Trust for no consideration;

   (b)    Mr. Forbes continued to control the Wisconsin Property after its transfer to the Forbes Family Trust;

(c)     Mr. Tucker, the Trustee of the Forbes Family Trust, was Mr. Forbes' long-time attorney;

(d)     Mr. Forbes continued to possess the Wisconsin Property after the transfer;

(e)     Mr. Forbes continued to enjoy the benefits of the Wisconsin Property after the transfer; and

(f)     After the transfer, Mr. Forbes spent nearly $3 million of his own money to improve and maintain the Wisconsin Property.

72.     Therefore, the Wisconsin Property is subject to execution by the United States in the same manner as if Mr. Forbes held legal title to the same.

### THIRD COUNT
(By Plaintiff Cendant –
Intentional Fraudulent Transfer Against Defendants Walter A. Forbes and The Forbes Family Trust)

73.     Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

74.     Prior to either the creation of, or transfers to, the Forbes Family Trust, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfers, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits .

75.     At the time of the transfers to the Forbes Family Trust, Mr. Forbes was aware of the investigations into the financial fraud for which he was later convicted.

76.     Cendant is a creditor of Mr. Forbes.

77.     Mr. Forbes did not seek Cendant's consent to engage in the transfers to the Forbes Family Trust.

78. Mr. Forbes engaged in the transfers to the Forbes Family Trust with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

79. Cendant has been damaged.

FOURTH COUNT
(By Plaintiff Cendant –
Unjust Enrichment Against Defendants Walter A. Forbes and The Forbes Family Trust)

80. Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

81. For many years, perhaps decades, Mr. Forbes had been the sole or predominant financial care provider for the entire Forbes family.

82. Mr. Forbes, with the aid of Mr. Tucker and Buck Sturmer, has arranged his financial affairs to give the appearance that he does not hold legal title to real property or any significant personal property but nonetheless had full use and enjoyment of such assets as if he held a whole or joint ownership interest therein.  In particular, Mr. Forbes, along with Mr. Tucker and Buck Sturmer, has caused legal title to the Wisconsin Property to be placed solely in the name of the Forbes Family Trust but retained and enjoyed all attributes of ownership of the same except for legal title.  This structure was implemented, in large measure, because of potential civil and criminal liability Mr. Forbes faced related to his participation in illegal activity at CUC for which he would later be convicted.

83. The structure of Mr. Forbes' financial affairs was designed deliberately to shield the Wisconsin Property from creditors or others who might make a claim against Mr. Forbes for his illegal acts, which remained undisclosed to the public until April 15, 1998.

84.     By reason of the foregoing, it offends equity and good conscience for Defendant Forbes Family Trust to enjoy and retain the exclusive ownership of the Wisconsin Property to the exclusion of Mr. Forbes' creditors.

85.     By reason of the foregoing, Defendant Mr. Tucker, as Trustee of the Forbes Family Trust, wrongfully assisted Mr. Forbes in, and therefore, has engaged in, conduct that has wrongfully harmed the Plaintiffs.

86.     By reason of the foregoing, Defendant Forbes Family Trust has been unjustly enriched to the detriment of the Plaintiffs.

87.     By reason of the foregoing, Cendant may, by this proceeding in equity, hold Defendant Forbes Family Trust personally liable to Cendant for the amounts of its improper financial gains, as aforesaid described.

88.     By reason of the foregoing, a constructive trust should be imposed upon the Wisconsin Property and other assets of Defendant Forbes Family Trust, and said Defendant should be required to hold the same for the benefit of Cendant.

### FIFTH COUNT
(By Plaintiff Cendant –
Civil Conspiracy Against Defendants Walter A. Forbes, Robert T. Tucker Individually and Buck Sturmer)

89.     Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

90.     Both Defendants Mr. Tucker and Buck Sturmer, in concert with one another and with Mr. Forbes, orchestrated a scheme to hinder, delay or defraud Mr. Forbes' creditors, including the United States, Cendant and Cendant's shareholders, through the establishment and funding of the Forbes Family Trust.

91.     Through this conspiracy, the defendants effectuated the transfer of the Wisconsin Property and nearly $3 million in cash from Mr. Forbes to the Forbes Family Trust for no consideration.

92.     In an attempt to make the Forbes Family Trust appear legitimate, Mr. Tucker and Buck Sturmer created an arrangement whereby Mr. Forbes would pay the Forbes Family Trust rental payments for the use of the Wisconsin Property.

93.     By memorandum dated December 3, 1998, Douglas Buck ("Mr. Buck"), a principal of Buck Sturmer, informed his associates that the Forbes Family Trust had been established and now owned Hell Roaring Ranch and the Wisconsin Property.  In his memorandum, Mr. Buck acknowledges the arrangement is "not a normal grantor trust to avoid probate."

94.     By memorandum dated August 7, 2000, Mr. Buck instructed his associates to establish a bank account from which the Wisconsin Property's running expenses would be paid.  Mr. Buck instructed the associates to make Mr. Tucker a signatory on the account.

95.     By the same August 7, 2000 memorandum, Mr. Buck informed his associates that "Walter will continue to pay capital improvements and furniture which will be construed as 'gifts' to the Forbes Family Trust."

96.     By memorandum dated November 14, 2000, Mr. Buck informed his associates that "Walter will be using the Wisconsin property and will pay a perdiem (sic) rent based on the perdiem (sic) rental appraisal we just got from a legitimate broker evaluation."

97.     By letter memorandum dated January 3, 2001, Mr. Tucker forwarded to Mr. Forbes a draft letter agreement between the Forbes Family Trust and Walter Forbes.

Under the terms of the letter agreement, Mr. Forbes would agree to rent the Wisconsin Property from the Forbes Family Trust for 30 days per year, at a price of $40,000. Mr. Forbes would also agree to pay the Forbes Family Trust $100,000 for prior rentals through 2000. In return, the Forbes Family Trust would pay Mr. Forbes $97,032 to reimburse him for the money advanced for operating expenses.

98.     By memorandum dated January 3, 2001, a copy of which was sent to Mr. Tucker, Mr. Buck informed an associate about the terms of the letter agreement.

99.     By memorandum dated January 12, 2001, Mr. Buck informed his associates that the Forbes Family Trust would likely derive no income from the rental arrangement because "other than Walter, it is unlikely anyone will rent the property."

100.     Upon information and belief, the rental scheme was not in the best interests of the Forbes Family Trust, and was devised solely to make the transfer of the Wisconsin Property into the Forbes Family Trust appear legitimate.

101.     Along with the rental scheme, Messrs. Tucker and Forbes, in conjunction with Buck Sturmer, also orchestrated a plan by which money spent by Mr. Forbes for furnishings and capital improvements for the Wisconsin Property would be booked as loans to the Forbes Family Trust. Again, this mortgage scheme was designed solely to make the Forbes Family Trust appear legitimate.

102.     By memorandum dated January 3, 2001, Mr. Tucker informed Mr. Milliken that Walter and Caren Forbes had advanced money for construction and furnishings for the Wisconsin Property. Mr. Tucker instructed Mr. Milliken to draft promissory notes from the Forbes Family Trust to Walter and Caren for the amounts purportedly spent by the two.

103. The following notes were executed by the Forbes Family Trust to Walter Forbes:

      (a)      December 31, 1998 - $382,281.10

      (b)      December 31, 1999 - $790,979.43

      (c)      December 31, 2000 - $1,655,091.48

      (d)      February 12, 2001 - $50,000.00

104. By memorandum dated March 26, 2001, nearly a month after Mr. Forbes had been indicted, Mr. Tucker instructed Mr. Milliken to redo the obligations and make them to the order of Caren Forbes. Mr. Tucker informed Mr. Milliken that "[a]lthough certain of the funds came from Walter, he had immediately gifted the Promissory Notes and related Mortgages to Caren; therefore, all of the Notes and Mortgages should be in her name." Mr. Tucker then advised Mr. Milliken that he would send the Notes and Mortgages made to Mr. Forbes' order back to Mr. Milliken.

105. As a result of the mortgage scheme, the Forbes Family Trust became indebted to Mrs. Forbes for money actually received from Mr. Forbes.

106. At the time Mr. Tucker and Buck Sturmer actively aided the transfers to the Forbes Family Trust and effectuated the lease and mortgage schemes, they knew or reasonably should have known that Mr. Forbes was the subject of investigation for activity for which he would later be convicted.

107. Cendant is a creditor of Mr. Forbes.

108. Cendant has been damaged by the civil conspiracy between Mr. Tucker, Buck Sturmer and Mr. Forbes.

## SIXTH COUNT
### (By Plaintiff United States of America –
### Intentional Fraudulent Transfer of Forbes Residence Against Defendants Walter A.
### Forbes and Caren Forbes)

109.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

110.     On December 2, 1997, for the sum of $4,650,000.00, Walter and Caren Forbes acquired property commonly known as 687 Smith Ridge Road, New Canaan, Connecticut ("the Forbes Residence") as Joint Tenants with the Right of Survivorship.

111.     Upon information and belief, it was primarily income and money earned by Mr. Forbes while he was an officer of CUC and then Cendant that was used for the acquisition of the Forbes Residence.

112.     Upon information and belief, Mr. Forbes is the only person whose financial resources have been used over the years for the upkeep, maintenance and improvements of the Forbes Residence, thereby maintaining and improving the overall equity value of the Forbes Residence.

113.     Said expenses include, but are not limited to, payments of the mortgage indebtedness, real property taxes, insurance premiums, maintenance and repairs.

114.     On December 15, 1999, Mr. Forbes transferred his interest in the Forbes Residence to Defendant Mrs. Forbes for the nominal consideration of $10.00.  Eight days before the transfer of the Forbes Residence, on December 7, 1999, Cendant Corporation publicly announced that it had reached an agreement in principle to settle the bulk of the Shareholder Suits in consideration for, among other things, a cash payment of approximately $2.85 billion.

115. Upon information and belief, the value of the Forbes Residence presently exceeds $10 million and Mr. Forbes testified at his criminal trial that the value of the property was between $10 and $15 million at the time of the transfer.

116. Prior to the transfer of the Forbes Residence, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value. Moreover, at the time of the transfer, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

117. At the time of the transfer, Mr. Forbes was aware of the investigations into the financial fraud for which he was later convicted.

118. As a result of the Restitution Order of January 17, 2007, the United States is a creditor of Mr. Forbes.

119. Mr. Forbes did not seek the United States' consent for the transfer of his interest in the Forbes Residence.

120. Mr. Forbes transferred his interest in the Forbes Residence with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

121. Mrs. Forbes was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

### SEVENTH COUNT
(By Plaintiff United States of America –
Nominee Ownership of Forbes Residence Against Defendants Walter A. Forbes and
Caren Forbes)

122. Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

123. Upon information and belief, Mr. Forbes continued to enjoy the benefits of the Forbes Residence from December 15, 1999 to the date of his incarceration on August 7, 2007.

124. Mrs. Forbes is a nominee who holds bare legal title to the Forbes Residence for the benefit of Mr. Forbes.

125. Property held by a taxpayer's nominee or alter ego may be subjected to a federal tax lien or levy.

126. The Restitution Order against Mr. Forbes is a lien in favor of the United States on all property and rights to property of Mr. Forbes as if the liability of Mr. Forbes were a liability for tax assessed under the Internal Revenue Code of 1986.

127. Accordingly, the nominee theory of ownership applied by federal courts to levy on property held by nominees of delinquent taxpayers is equally applicable to property held by nominees of defendants ordered to pay restitution.

128. The following applicable factors are to be considered in determining whether property is held by a nominee:

   (a)   inadequate or no consideration was paid by the nominee;

   (b)   the property was placed in the nominee's name while the transferor remains in control of the property;

   (c)   there is a close relationship between the nominee and the transferor;

   (d)   the transferor retains possession;

   (e)   the transferor continues to enjoy the benefits of the transferred property; and

   (f)   expenditure of personal funds by the transferor to purchase and maintain the property.

129. All of the factors are present here:

(a) Mr. Forbes transferred his interest in the Forbes Residence for nominal consideration;

(b) Mr. Forbes continued to control the Forbes Residence after the transfer;

(c) The transferee, Mrs. Forbes, is Mr. Forbes' wife;

(d) Mr. Forbes maintained possession of the Forbes Residence after the transfer;

(e) Mr. Forbes continued to enjoy the benefits of the Forbes Residence after the transfer; and

(f) After the transfer, Mr. Forbes continued to spend funds to maintain, improve and pay property taxes on the Forbes Residence.

130. Therefore, the Forbes Residence is subject to execution by the United States in the same manner as if Mr. Forbes held legal title to the same.

EIGHTH COUNT
(By Plaintiff Cendant –
Intentional Fraudulent Transfer of Forbes Residence Against Defendants Walter A. Forbes and Caren Forbes)

131. Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

132. Eight days before the transfer of the Forbes Residence, on December 7, 1999, Cendant Corporation publicly announced that it had reached an agreement in principle to settle the bulk of the Shareholder Suits in consideration for, among other things, a cash payment of approximately $2.85 billion. In the settlement agreement, Cendant specifically retained the right to sue Mr. Forbes for contribution.

133. At the time of the transfer of the Forbes Residence, Cendant was a present creditor of Mr. Forbes.

134. At the time of the transfer, Mr. Forbes was aware of the investigations into the financial fraud for which he was later convicted.

135. Mr. Forbes did not seek Cendant's consent to transfer the Forbes Residence.

136. Mr. Forbes transferred his interest in the Forbes Residence with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

137. Cendant has been damaged.

NINTH COUNT
(By Plaintiff Cendant –
Unjust Enrichment Against Defendant Caren Forbes)

138. Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

139. For many years, perhaps decades, Mr. Forbes had been the sole or predominant financial care provider for the entire Forbes family.

140. Mr. Forbes and Mrs. Forbes have arranged their financial affairs to make certain that Mr. Forbes does not hold legal title to real property or any significant personal property but nonetheless had full use and enjoyment of such assets as if he held a whole or joint ownership interest. In particular, Mr. Forbes has caused legal title to the Forbes Residence to be placed solely in the name of Mrs. Forbes but retained and enjoyed all attributes of ownership of the Forbes Residence except for legal title. This structure was implemented, in large measure, because of potential civil and criminal liability Mr. Forbes faced related to his participation in illegal activity at CUC for which he would later be convicted.

141. The structure of Mr. and Mrs. Forbes' financial affairs was designed deliberately to attempt to shield the Forbes Residence from creditors or others who might make

a claim against Mr. Forbes for his illegal acts, which remained undisclosed to the public until April 15, 1998.

142.     By reason of the foregoing, it offends equity and good conscience for Defendant Mrs. Forbes to enjoy and retain the exclusive ownership of the Forbes Residence to the exclusion of Mr. Forbes' creditors.

143.     By reason of the foregoing, Defendant Mrs. Forbes wrongfully assisted Mr. Forbes in, and therefore, has engaged in, conduct that has wrongfully harmed Cendant.

144.     By reason of the foregoing, Defendant Mrs. Forbes has been unjustly enriched to the detriment of Cendant.

145.     By reason of the foregoing, Cendant may, by this proceeding in equity, hold Defendant Mrs. Forbes personally liable to the Plaintiffs for the amounts of her improper financial gains, as aforesaid described.

146.     By reason of the foregoing, a constructive trust should be imposed upon the Forbes Residence and other assets of Defendant Mrs. Forbes, and said Defendant should be required to hold the same for the benefit of Cendant.

### TENTH COUNT
(By Plaintiff United States of America –
Intentional Fraudulent Transfer of the Vero Beach Property Against Defendants Walter A.
Forbes and Caren Forbes)

147.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

148.     On January 14, 1994, Mr. Forbes acquired property commonly known as 100 Ocean Road, Apartment #312, Vero Beach, Florida (the "Vero Beach Property").

149.     Upon information and belief, it was solely income and money earned by Mr. Forbes while an officer of CUC and then Cendant that was used for the acquisition of the Vero Beach Property.

150.     Upon information and belief, Mr. Forbes is the only person whose financial resources have been used over the years for the upkeep, maintenance and improvements of the Vero Beach Property, thereby maintaining and improving the overall equity value of the Residence.

151.     Said expenses include, but are not limited to, payments of the real property taxes, insurance premiums, condominium fees, maintenance and repairs.

152.     On December 4, 1998, Mr. Forbes transferred his interest in the Vero Beach Property to Caren Forbes for the nominal consideration of $10.00.

153.     At the time of the transfer, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfer, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

154.     At the time of the transfer, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

155.     As a result of the Restitution Order of January 17, 2007, the United States is a creditor of Mr. Forbes.

156.     Mr. Forbes did not seek the United States' consent for the transfer of his interest in the Vero Beach Property.

157. Mr. Forbes transferred his interest in the Vero Beach Property with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

158. Mrs. Forbes was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

ELEVENTH COUNT
(By Plaintiff United States of America –
Nominee Ownership of the Vero Beach Property Against Defendants Walter A. Forbes and Caren Forbes)

159. Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

160. Upon information and belief, Mr. Forbes continued to enjoy the benefits of the Vero Beach Property from December 15, 1999 to the date of his incarceration on August 27, 2007.

161. Mrs. Forbes is a nominee who holds bare legal title to the Vero Beach Property for the benefit of Mr. Forbes.

162. Property held by a taxpayer's nominee or alter ego may be subjected to a federal tax lien or levy.

163. The Restitution Order against Mr. Forbes is a lien in favor of the United States on all property and rights to property of Mr. Forbes as if the liability of Mr. Forbes were a liability for tax assessed under the Internal Revenue Code of 1986.

164. Accordingly, the nominee theory of ownership applied by federal courts to levy on property held by nominees of delinquent taxpayers is equally applicable to property held by nominees of defendants ordered to pay restitution.

165.     The following applicable factors are to be considered in determining whether property is held by a nominee:

(a)     inadequate or no consideration was paid by the nominee;

(b)     the property was placed in the nominee's name while the transferor remains in control of the property;

(c)     there is a close relationship between the nominee and the transferor;

(d)     the transferor retains possession;

(e)     the transferor continues to enjoy the benefits of the transferred property; and

(f)     expenditure of personal funds by the transferor to purchase and maintain the property.

166.     All of the factors are present here:

(a)     Mr. Forbes transferred his interest in the Vero Beach Property for nominal consideration;

(b)     Mr. Forbes continued to control the Vero Beach Property after the transfer;

(c)     The transferee, Mrs. Forbes, is Mr. Forbes' wife;

(d)     Mr. Forbes retained possession of the Vero Beach Property after the transfer;

(e)     Mr. Forbes continued to enjoy the benefits of the Vero Beach Property after the transfer;

(f)     After the transfer, Mr. Forbes continued to spend funds to maintain and improve the Vero Beach Property.

167.     Therefore, the Vero Beach Property is subject to execution by the United States in the same manner as if Mr. Forbes held legal title to the same.

## TWELFTH COUNT
### (By Plaintiff Cendant –
### Intentional Fraudulent Transfer of Vero Beach Property Against Defendants Walter A. Forbes and Caren Forbes)

168.    Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

169.    At the time of the transfer of the Vero Beach Property, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfer, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

170.    At the time of the transfer, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

171.    Cendant is a creditor of Mr. Forbes.

172.    Mr. Forbes did not seek Cendant's consent for the transfer of his interest in the Vero Beach Property.

173.    Mr. Forbes transferred his interest in the Vero Beach Property with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

174.    Mrs. Forbes was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

175.    Cendant has been damaged.

## THIRTEENTH COUNT
### (By Plaintiff United States of America –
### Intentional Fraudulent Transfer of Cash, Securities and Partnership Interests  Against Defendants Walter A. Forbes, Caren Forbes, Laura Carlin, Allison Forbes, and John Doe Trustee of the John Doe Trust)

176.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

177.     Upon information and belief, between 1998 and 2003, Mr. Forbes made the following transfers of cash, securities and partnership interests for no consideration:

| DATE | AMOUNT | | TRANSFEREE |
|---|---|---|---|
| 07/29/1998 | $10,000,000.00 | | Caren Forbes |
| 08/05/1998 | $4,000,000.00 | | Caren Forbes |
| 11/18/1999 | $550,000.00 | | Caren Forbes |
| 1998 | Stock Transfers | # of Shares | Caren Forbes |
| | $26,500 Greenwich Technology Partners | 106,000 | |
| | $22,448 Jamba Juice | 8,568 | |
| | $22,493 College Enterprises | 3,434 | |
| | $19,094 Home Financial Network | 6,240 | |
| | $10,096 Add Vision | 3,434 | |
| 1998-2001 | $5,772,367.83 | | Caren Forbes |
| *Sub Total* | *$20,422,998.83* | | |
| 07/29/1998 | $150,000.00 (cash transfer not reported on gift tax return) | | Laura Carlin |

| DATE | AMOUNT | TRANSFEREE |
|---|---|---|
| 1998 | Stock Transfers          # of Shares<br><br>$4,450 Greenwich Technology Partners    4,450<br><br>$2,641 Jamba Juice    252<br><br>$6,295 College Enterprises    240<br><br>$1,499 Home Financial Network    123<br><br>$3,819 Add Vision    325 | Laura Carlin |
| 1998-2001 | $241,216.00 (cash transfers not reported on gift tax return) | Laura Carlin |
| 01/25/2001 | $54,008.00 | Laura Carlin |
| 2002 | $28,268.00 | Laura Carlin |
| 2003 | $15,189.00 | Laura Carlin |
| ***Sub Total*** | ***$507,385.00*** | |
| 07/29/1998 | $150,000.00 (cash transfer not reported on gift tax return) | Allison Forbes |
| 1998 | Stock Transfers          # of Shares<br><br>$4,450 Greenwich Technology Partners    4,450<br><br>$2,641 Jamba Juice    252<br><br>$6,295 College Enterprises    240<br><br>$1,499 Home Financial Network    123<br><br>$3,819 Add Vision    325 | Allison Forbes |
| 1998-2001 | $50,571.00 (cash transfers not reported on gift tax return) | Allison Forbes |

| DATE | AMOUNT | TRANSFEREE |
|------|--------|------------|
| | | |
| 2001 | $56,008.00 | Allison Forbes |
| 2002 | $37,368.00 | Allison Forbes |
| 2003 | $15,050.00 | Allison Forbes |
| *Sub Total* | *$327,701.00* | |
| 1998 | $71,101.00 | John Doe Trust |
| 1999 | $70,101.00 | John Doe Trust |
| 2000 | $70,101.00 | John Doe Trust |
| 2001 | $69,000.00 | John Doe Trust |
| *Sub Total* | *$280,303.00* | |
| *GRAND TOTAL* | *$21,538,386.83* | |

178.     As of January 1, 2002, Mr. Forbes also had transferred the following ownership

interests in certain business entities to his daughters for no consideration:

| DATE | AMOUNT | TRANSFEREE |
|------|--------|------------|
| 01/01/2002 | 1.8% Interest in Lakefront Investments LLC | Laura Carlin |
| 01/01/2002 | 4% Interest in Oceanfront Investments LLC | Laura Carlin |
| 01/01/2002 | 1.8% Interest in Lakefront Investments LLC | Allison Forbes |
| 01/01/2002 | 4% Interest in Oceanfront Investments LLC | Allison Forbes |

179.     In addition, Mr. Forbes transferred his interest in Hell Roaring Ranch to the Forbes Family Trust on June 8, 1998 for no consideration.  On December 20, 2005, the Forbes Family Trust sold that interest for $1 million.  Two days later, on December 22, 2005, the Forbes Family Trust transferred the $1 million proceeds to Mrs. Forbes.

180.     Upon information and belief, Mrs. Forbes then attempted to transfer the $1 million into a trust called the "Caren Forbes Revocable Trust."  Upon information and belief, no such trust was ever successfully established.  Upon information and belief, the $1 million proceeds of the Hell Roaring Ranch sale remained that of Mrs. Forbes.

181.     At the time of the transfers listed in paragraphs 177- 180 above, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfers, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

182.     At the time of the transfers listed in paragraphs 177 - 180 above, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

183.     As a result of the Restitution Order, the United States is a creditor of Mr. Forbes.

184.     Mr. Forbes did not seek the United States' consent for the transfers listed in paragraphs 177 - 180 above.

185.     Mr. Forbes made the transfers listed in paragraphs 177- 180 above with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the

United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

186.     Mrs. Forbes, Laura Carlin, Allison Forbes and John Doe Trustee of the John Doe Trust are all transferees, participants and beneficiaries of Mr. Forbes' fraudulent transfers.

### FOURTEENTH COUNT
(By Plaintiff Cendant –
Intentional Fraudulent Transfer of Cash, Securities and Partnership Interests Against
Defendants Walter A. Forbes, Caren Forbes, Laura Carlin, Allison Forbes and John Doe
Trustee of the John Doe Trust)

187.     Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

188.     At the time of the transfers listed in paragraphs 177 - 180 above, Cendant was a present creditor.

189.     At the time of the transfers listed in paragraphs 177 - 180 above, Mr. Forbes was aware of the investigations into the financial fraud for which he was later convicted.

190.     Mr. Forbes did not seek Cendant's consent to engage in the transfers listed in paragraphs 177 - 180 above.

191.     Mr. Forbes engaged in the transfers listed paragraphs 177 - 180 above with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

192.     Cendant has been damaged.

### FIFTEENTH COUNT
(By Plaintiff United States of America –
Intentional Fraudulent Transfer of the Vail Property Against Defendants Walter A.
Forbes and Caren Forbes)

193.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

194.     On September 27, 1991, Mr. and Mrs. Forbes acquired property commonly known as 362 Mill Creek Circle, Vail, Colorado (the "Vail Property") for $3,500,000.

195.     On June 8, 1998, Mr. Forbes transferred his interest in the Vail Property to Mrs. Forbes for nominal consideration.  Three days later, on June 11, 1998, Mr. Forbes met with the Cendant Audit Committee regarding the accounting irregularities.

196.     On November 15, 2001, Mrs. Forbes sold the Vail Property to Thomas Marsico for $13,500,000.

197.     At the time of the transfer of the Vail Property, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfer, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

198.     At the time of the transfer, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

199.     As a result of the Restitution Order of January 17, 2007, the United States is a creditor of Mr. Forbes.

200.     Mr. Forbes did not seek the United States' consent for the transfer of his interest in the Vail Property.

201.     Mr. Forbes transferred his interest in the Vail Property with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

202.     Mrs. Forbes was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

## SIXTEENTH COUNT
(By Plaintiff Cendant –
Intentional Fraudulent Transfer of the Vail Property Against Defendants Walter A.
Forbes and Caren Forbes)

203.     Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

204.     At the time of the transfer of the Vail Property, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfer, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

205.     At the time of the transfer, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

206.     Cendant is a creditor of Mr. Forbes.

207.     Mr. Forbes did not seek Cendant's consent to transfer the Vail Property.

208.     Mr. Forbes transferred his interest in the Vail Property with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

209.     Cendant has been damaged.

## SEVENTEENTH COUNT
### (By Plaintiff United States of America –
### Intentional Fraudulent Transfers  Against Defendants Walter A. Forbes and  FG
### Enterprises LLC)

210.     Plaintiff United States repeats and realleges its allegations in this Complaint as if set forth fully herein.

211.     Upon information and belief, in 1998 Mr. Forbes transferred approximately $1,708,923 in partnership interests to FG Enterprises LLC for no consideration.

212.     Upon information and belief, in 1999 Mr. Forbes transferred approximately $570,329.00 to FG Enterprises LLC for no consideration.

213.     Upon information and belief, in 2000 Mr. Forbes transferred approximately $197,836.00 to FG Enterprises LLC for no consideration.

214.     Upon information and belief, in 2001 Mr. Forbes transferred approximately $95,838.37 to FG Enterprises LLC for no consideration.

215.     Upon information and belief, at all relevant times, FG Enterprises LLC was solely operated and controlled by Mr. Forbes.

216.     Upon information and belief, FG Enterprises LLC subsequently fraudulently transferred the funds transferred by Mr. Forbes to other entities.

217.     At the time of the transfers to FG Enterprises LLC, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value.  Moreover, at the time of the transfers, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

218. At the time of the transfers, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

219. As a result of the Restitution Order of January 17, 2007, the United States is a creditor of Mr. Forbes.

220. Mr. Forbes did not seek the United States' consent for the transfers made to FG Enterprises LLC.

221. Mr. Forbes made the transfers to FG Enterprises LLC with actual intent to hinder, delay or defraud one or more creditors, including, without limitation, the United States and/or the Cendant shareholders who were named as plaintiffs in the Shareholder Suits.

222. FG Enterprises LLC was a transferee, participant and beneficiary of Mr. Forbes' fraudulent transfer.

EIGHTEENTH COUNT
(By Plaintiff Cendant –
Intentional Fraudulent Transfers Against Defendants Walter A. Forbes and FG
Enterprises LLC)

223. Plaintiff Cendant repeats and realleges all previous allegations in this Complaint as if set forth fully herein.

224. Cendant is a creditor of Mr. Forbes.

225. At the time of the transfers to FG Enterprises LLC, Cendant had already disclosed the fraudulent activity for which Mr. Forbes would later be convicted and which resulted in a $14 billion (46%) one-day decline in Cendant stock value. Moreover, at the time of the transfers, Mr. Forbes was already aware that he was a named defendant in the Shareholder Suits.

226.     At the time of the transfers, Mr. Forbes was also aware of investigations into the financial fraud for which he was later convicted.

227.     Mr. Forbes did not seek Cendant's consent for the transfers to FG Enterprises LLC.

228.     Mr. Forbes made the transfers to FG Enterprises LLC with actual intent to hinder, delay or defraud one or more creditors, including Cendant.

229.     Cendant has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby petition this Court for an Order providing for:

1.    An award of monetary damages, the precise amount of such damages to be determined upon a full trial on the merits;

2.    Avoidance of the fraudulent transfers;

3.    Attachment of the property fraudulently transferred;

4.    Garnishment of any proceeds of the fraudulent transfers;

5.    An award of reasonable attorneys' fees, costs and disbursements of this action;

6.    An attachment or other provisional remedy against the assets transferred or other property of the above named defendants;

7.    An injunction against further disposition by the above named defendants of the transfers as described in the Joint Complaint;

8.    The appointment of a receiver to take charge of the assets so transferred, or of other property of the above named defendants;

9.    A finding, judgment and decree that Defendant Mrs. Forbes holds the Forbes Residence and the Vero Beach Property and the products and proceeds of improper financial gains as described in the Joint Complaint in constructive trust for the benefit of the Plaintiffs;

10.    A finding, judgment and decree that Mr. Tucker, as Trustee for the Forbes Family Trust, holds the Wisconsin Property and the products and proceeds of the improper financial gains described in the Joint Complaint in constructive trust for the benefit of the Plaintiffs;

11.     An order that a judgment lien or other execution process may be placed upon the assets of the above named defendants in favor of the Plaintiffs;

12.     Money damages against the above named defendants by reason of the inequitable conduct and improper financial gains as set forth in the Joint Complaint;

13.     Pursuant to 28 U.S.C. § 2201, a declaration that Mrs. Forbes holds title to the Forbes Residence and the Vero Beach Property as nominee for Mr. Forbes and, therefore, that the Forbes Residence and Vero Beach Property are subject to execution by the United States in the same manner as if Mr. Forbes held legal title to same;

14.     Pursuant to 28 U.S.C. § 3306(a)(1), the avoidance of the fraudulent transfers described above to the extent necessary to satisfy the Restitution Order owed by Mr. Forbes;

15.     Pursuant to 28 U.S.C. § 3307(b), money judgments, for the value of assets fraudulently transferred, against all Defendants (the "Transferee Defendants") who are: (a) a first transferee of such an asset; (b) a person for whose benefit such a transfer was made; and/or, (c) a subsequent transferee who was not (or did not take from) a good faith transferee for value.  Pursuant to 28 U.S.C. § 3307(c), the value of such assets transferred, and therefore the amount of the money judgment, is the value of the asset at the time of the transfer, subject to adjustment as the equities may require;

16.     Pursuant to 28 U.S.C. §§ 3306(a)(2) and 3104, garnishment of bank and/or securities accounts maintained by the Transferee Defendants up to the value of the assets transferred to and/or for the benefit of these Defendants;

17.     Pursuant to 28 U.S.C. §§ 3306(a)(2) and 3102, attachment of all property in the possession, custody or control of the Transferee Defendants, and in which such Defendants

have substantial non-exempt interests, up to the value of the assets transferred to and/or for the benefit of these Defendants; and,

18.     Pursuant to 28 U.S.C. § 3306(a)(3), any other relief the circumstances may require; and

19.     Such other and further relief as at law or in equity may pertain.

PLAINTIFFS -

UNITED STATES OF AMERICA

CHRISTOPHER J. CHRISTIE

Special Attorney
U.S. Attorney's Office, District of New Jersey


    /s/ Jordan M. Anger
    Jordan M. Anger – PHV02694
    jordan.anger@usdoj.gov
    Assistant United States Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey 07102
    Telephone:  (973) 645-2829
    Facsimile:  (973) 297-2010


CENDANT CORPORATION
*N/K/A* AVIS BUDGET GROUP, INC.


    /s/ Francis J. Brady
    Francis J. Brady – ct04296
    fbrady@murthalaw.com
    Robert E. Kaelin – ct11631
    rkaelin@murthalaw.com
    Christopher R. Drake – ct27477
    cdrake@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  (860) 240-6000
Facsimile:   (860) 240-6150

Its Attorneys