UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America, and Cendant Corporation, n/k/a Avis Budget Group, Inc., <br> *Plaintiffs*, <br><br> *v.* <br><br> Walter A. Forbes; Forbes Family Trust by Wisconsin Trust Manager, LLC Trustee; Robert T. Tucker, individually; Buck, Sturmer & Co. PC; Caren Forbes; Laura Carlin; Alison Forbes; John Doe Trust by Garretson W. Chinn Trustee; FG Enterprises LLC; Frank Gallagi; Beth Freimour; and Father Gordon Development, LLC, <br> *Defendants*. | Civil No. 3:08cv933 (JBA) <br><br><br><br><br><br><br><br> April 15, 2009 |

**RULING ON MOTIONS TO DISMISS ROBERT T. TUCKER IN HIS INDIVIDUAL CAPACITY [Docs. ## 83, 136] AND BUCK, STURMER & CO. P.C. [Doc. # 81]**

The United States and Cendant Corporation ("Cendant") brought this action on June 19, 2008 to set aside allegedly fraudulent property transfers made by Walter A. Forbes ("Forbes") to his wife, daughters, friends, business associates, trusts, and business entities as part of their efforts to enforce the $3.275 billion restitution order imposed on Forbes. Plaintiffs' Amended Joint Complaint contains a claim for civil conspiracy (Count Five) asserted solely by Cendant against Forbes, Robert T. Tucker, individually, who served as Forbes's attorney with respect to personal and financial matters, and Buck, Sturmer & Co. P.C. ("Buck Sturmer"), a New York accounting firm that functioned as Forbes's accountant and managed the Forbes family's financial affairs. Defendants Tucker and Buck Sturmer (collectively "Defendants" hereafter) move to dismiss Count Five under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, their motions are granted.

I.     **Introduction**

This action traces its origins to an April 1998 drop in Cendant's share price on the New York Stock Exchange following Cendant's announcement that it had discovered accounting irregularities. (Am. Compl. [Doc. # 132] at ¶ 24.) At the time of the price drop, Forbes was Chairman of the Board of Cendant, a position he had held since December 1997, when Cendant was formed by the merger of CUC International, Inc. and HFS Inc. (*Id.* ¶¶ 20–35.)

Several shareholder actions were filed against Cendant and others, seeking to recover monetary damages that shareholders suffered as a result of the price drop linked to the accounting scandal. (*Id.* ¶ 26.) In December 1999, Cendant announced that it had reached an agreement in principle to settle these suits which reserved its right to bring actions for contribution against individuals. (*Id.* ¶¶ 37–38.)

In addition to the shareholder actions, criminal charges were brought against several Cendant executives, including Forbes, who was indicted by a grand jury on February 28, 2001. (*Id.* ¶¶ 20, 42–43.) At his third criminal trial—his first two criminal trials ended in mistrials—Forbes was convicted of conspiracy and of making a false statement in a report to be filed with the Securities and Exchange Commission and sentenced to 151 months in prison. (*Id.* ¶¶ 44–45.) The docket from Forbes's first criminal trial reflects the addition of

Cendant as an "interested party" on April 7, 2003. On January 17, 2007, Judge Nevas denied Forbes's motion for a new trial and imposed a restitution order of $3.275 billion. (*Id.* ¶ 46.) *See United States v. Forbes*, No. 3:02cr264 (AHN), 2007 WL 141952, 2007 U.S. Dist. LEXIS 3346 (D. Conn. Jan. 17, 2007).

Cendant alleges that prior to conviction, Forbes, named as a defendant in the shareholder suits and aware of additional investigations into his financial fraud, engaged in fraudulent transfers designed to shield his assets from future creditors. (Am. Compl. ¶¶ 61–62.) Cendant alleges that Defendants, with Forbes, established and funded the Forbes Family Trust as part of a scheme to hinder, delay, or defraud Forbes's creditors, and that through this scheme, Defendants effectuated the transfer of Forbes's interest in real estate located in Wisconsin (the "Wisconsin Property" and "Wisconsin Transfer") to the Forbes Family Trust for no consideration. (*Id.* ¶¶ 93–94.) At oral argument, Cendant clarified that Count Five concerns only the Wisconsin Property. Cendant, a creditor of Forbes, alleges that it was damaged as a result of the fraudulent transfer of the Wisconsin Property and seeks to have the Wisconsin Transfer undone.

Although Tucker and Buck Sturmer advance slightly different arguments as to why Cendant's claim for civil conspiracy should be dismissed as to each of them, the central dispute between Cendant and Defendants concerns the applicable statute of limitations. The parties dispute whether Connecticut, New York, or Wisconsin state law governs, and

whether the statute of limitations under governing state law bars Cendant's claim for civil conspiracy.

## II.     Standard

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  Courts may take judicial notice of matters of public record. *Clarry v. United States*, 891 F. Supp. 105, 109 (E.D.N.Y. 1995), *aff'd*, 85 F.3d 1041 (2d Cir. 1996). Judicial notice related to other litigation serves to establish the fact of litigation or what statements are contained in court documents. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

A federal court sitting in diversity in Connecticut must apply the choice of law rules that would be applied by the Connecticut Supreme Court. *Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).  The present dispute concerns whether the Connecticut Supreme Court would apply the law of Connecticut, New York, or Wisconsin to the alleged fraud, *i.e.*, which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Restatement (Second) of Conflict of Laws]." Restatement (Second) of Conflict of Laws § 145(1) (1971); *see, e.g.*, *O'Connor v. O'Connor*, 201 Conn. 632, 649–50 (1986).

### III.     Discussion

Buck Sturmer urges application of New York law and argues that Count Five must be dismissed as to him because New York fails to recognize conspiracy as an independent tort. Alternatively, it argues that Count Five is time-barred under each of the three states' statues of limitations. Tucker first argues that Connecticut law governs, under which Count Five is time-barred by the three-year Connecticut statute of limitations, because the Wisconsin Transfer took place seven years prior to the filing of the Complaint. *See* Conn. Gen. Stat. § 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act . . . complained of"). He further argues that he cannot be held liable under either New York or Connecticut law because Cendant has not alleged any benefit to Tucker from the Wisconsin Transfer, as required by those states. Finally, Tucker argues that if Wisconsin law applies, Count Five is time-barred by Wis. Stat. § 893.425.

Cendant conceded at oral argument that if Wisconsin law did not apply, Defendants' motions must be granted. It urges the application of Wisconsin law, which provides a cause of action for civil conspiracy, because Wisconsin is the situs state of the property whose allegedly fraudulent transfer underpins its claim.

#### A.     *The Wisconsin Statute of Limitations*

Notwithstanding the parties disagreement as to which state's law applies, they do agree that insofar as Wisconsin law applies, that state's statute of limitations governing fraudulent transfers is applicable because, under Wisconsin law the statute of limitations for

5

the underlying tort governs a civil conspiracy claim. Thus, the governing statute of limitations is Wis. Stat. § 893.425 which provides, in relevant part:

> An action with respect to a fraudulent transfer under ch. 242 shall be barred unless the action is commenced:
>
>> (1) Under s. 242.04(1)(a), within 4 years after the transfer is made or the obligation is incurred, or, if later, within one year after the transfer or obligation is or could reasonably have been discovered by the claimant.

Wis. Stat. § 893.425. Cendant argues that its claims against Defendants in Count Five should not be dismissed at this time because the date when it discovered or should have discovered the Wisconsin Transfer are factual issues whose resolution is inappropriate on a motion to dismiss. For the following reasons, assuming *arguendo* that § 893.425 applies, the Court concludes that Count Five is time-barred and must be dismissed as to these Defendants.

Under Wisconsin law, a statute of limitations "is an expression of legislative policy that claims and controversies, whatever their merit, if not litigated promptly, be laid to rest forever." *Gamma Tau Educ. Found. v. Ohio Cas. Ins. Co.*, 41 Wis. 2d 675, 683 (1969). The expiration of a statute of limitations extinguishes both the right and the remedy. *Schafer v. Wegner*, 78 Wis. 2d 127, 134 (1977). If the statute of limitations has run, the cause of action no longer exists. *Id.*

To have been timely filed under § 893.425, the Complaint must have been filed within four years after the Wisconsin Transfer was made, or, if later, within one year after the Wisconsin Transfer was or could reasonably have been discovered by Cendant. It is undisputed that Cendant did not bring this action within four years after the Wisconsin Transfer was made. The Warranty Deed transferring the Wisconsin Property to the Forbes

Family Trust was recorded on April 20, 2001, more than seven years before Cendant filed suit. (Am. Compl. ¶53; *see also* Cendant's Opp'n to Tucker's Mot. Dismiss [Doc. #90] at 16 n. 9 (arguing that date of recordation is date on which Wisconsin Transfer was effectuated).)

Cendant relies on § 893.425's discovery rule, under which its claim is timely if filed within one year after the Wisconsin Transfer was or could reasonably have been discovered by Cendant. The one year discovery period is not tolled if the plaintiff's injury is simply "undiscovered." *Claypool v. Levin*, 209 Wis. 2d 284, 301 (1997) (interpreting analogous and substantially similar statute of limitations enacted prior to § 893.425); *see also Stroh Die Casting Co., Inc. v. Monstanto Co.*, 177 Wis. 2d 91, 144 (1993) (holding that analogous statue of limitation precluded plaintiffs' reliance on actual discovery of products liability claim where information that could have been discovered "through the exercise of reasonable business practice . . . would alter [plaintiffs] to injury" at least six years earlier).

Cendant acknowledges that the one-year discovery limit is triggered when Cendant could reasonably have discovered the Wisconsin Transfer itself, and not when it could have learned of Defendants' involvement. It explained at oral argument that it relied primarily on discovery done by the government rather than conducting its own independent discovery in part because it had a tolling agreement with Forbes under which it would not bring suit against him until his criminal appeals were exhausted. This tolling agreement which may have operated to toll the statute of limitations for civil actions brought by Cendant against Forbes, is of no effect on the timing of civil actions brought against Defendants, who were not parties to the agreement.

B.     *Forbes's Testimony and Conviction*

As a general rule date of discovery is a question of fact whose resolution at this stage would be premature. *Stroh*, 177 Wis. 2d at 104 (1993). Where material facts and reasonable inferences to be drawn from the facts are undisputed, however, date of discovery and exercise of reasonable diligence are questions of law. *Id.* (date of discovery); *Hennekens v. Hoerl*, 160 Wis. 2d 144, 161 (1991) (reasonable diligence). Here, the facts essential to the inquiry are not in dispute. Together with facts of which judicial notice may be taken, the allegations in the Complaint demonstrate that Cendant should have discovered the Wisconsin Transfer no later than January 17, 2007, more than one year before Cendant filed suit.

On September 30, 2004, during his first criminal trial, Forbes testified about several property transfers that occurred shortly after the April 1998 drop in Cendant's share price, including "some land in Wisconsin that [he] put into a trust." (*See* Transcript of Trial, *United States v. Forbes*, No. 3:02cr264 (AWT) (D. Conn. Sept. 30, 2004), Ex. A to Tucker's Reply Mem. Supp. Mot. Dismiss [Doc. # 88] at 14387:6, 14401:17.) The parties agreed at oral argument that the "land in Wisconsin" to which Forbes referred is the Wisconsin Property at issue in Count Five. Thus, the existence of the Wisconsin Transfer became a matter of public record when Forbes testified on September 30, 2004. *Cf. State v. Bembenek*, 140 Wis. 2d 248, 254 (Ct. App. 1987) (trial transcripts are public record). At the time of Forbes's testimony, Cendant had been deemed an "interested party" in the criminal action for more than one year, and even if it missed hearing his live trial testimony, could have obtained a copy of the trial transcript and discovered the existence of the Wisconsin Transfer, *i.e.*, the transcript was within Cendant's reach. *See Groom v. Prof'l Ins. Co.*, 179 Wis. 2d 241, 251

8

(1991) ("[p]laintiffs may not close their eyes to means of information accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach") (quoting *Spitler v. Dean*, 148 Wis. 2d 630, 628 (1989)). Cendant's failure to obtain Forbes's testimony about the Wisconsin Transfer does not relieve it of the duty to file its action within one year after it could reasonably have discovered the transfer.

Moreover, the context of testimony that Forbes gave at his criminal trial should have been of the utmost interest to Cendant, particularly since Cendant's settlement of the shareholder actions reserved its rights to bring actions for contribution against individuals, including its former CEO, who was charged with conspiracy to fraudulently inflate Cendant's operating income. The circumstances under which the testimony was elicited gave reason to suspect that the Wisconsin Transfer was fraudulent. Indeed, as Judge Nevas explained in denying Forbes a new trial, his testimony and other evidence of Forbes's property transfers was properly admitted at trial because "in light of the circumstances in which [the property transfers] were made, those transfers constituted circumstantial evidence that was probative of whether Forbes had a consciousness of guilt." *Forbes*, 2007 WL 141952, *7, 2007 U.S. Dist. LEXIS 3346, *21. Even if Forbes's September 30, 2004 testimony did not alert Cendant to the fact that the Wisconsin Transfer was potentially fraudulent, Judge Nevas's January 17, 2007 ruling would have made clear to Cendant that Forbes had made property transfers which were potentially fraudulent. On the basis of this ruling, the Wisconsin Transfer could reasonably have been discovered by Cendant seventeen months before it brought suit against these Defendants. Having been filed more than one year after Cendant reasonably could have discovered the Wisconsin Transfer, Cendant's claim in Count Five as to Tucker and Buck Sturmer is time-barred by Wis. Stat. § 893.425.

**IV.     Conclusion**

For the reasons set forth above, Defendants' Motions to Dismiss [Docs. ## 81, 83, 136] are GRANTED.

IT IS SO ORDERED.

                                               /s/
                                      Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 15th day of April, 2009.